WILLIAMS v LOGAN

Docket No. 110353. Submitted March 16, 1990, at Detroit. Decided July 3, 1990.

Joseph Sommer, as personal representative of the estate of John Sommer, retained the law firm of James F. Logan, P.C., to represent the estate in a wrongful death action arising out of John Sommer's death. James F. Logan on behalf of the firm commenced the wrongful death action on the estate's behalf and eventually secured a settlement in the form of a consent judgment in the amount of $85,000, which was certified to the probate court. Joann Williams, as next friend of Jonathan Williams, moved to set aside the consent judgment and certification to the probate court on the ground that her son, Jonathan Williams, was the illegitimate son and sole heir of John Sommer. Following an evidentiary hearing, the circuit court determined that John Sommer was the father of Jonathan Williams and entered a new consent judgment and a new certification to the probate court. Joann Williams, as next friend of Jonathan Williams, then commenced in Wayne Circuit Court an action which included a legal malpractice claim against James F. Logan and James F. Logan, P.C., alleging that Logan knew or should have known of the existence of the minor child of John Sommer and that he was negligent in handling the wrongful death case for the estate by undervaluing the case and settling for less than a reasonable amount. Defendants Logan, individual and corporate, sought discovery on the question whether John Sommer was the child's father. The trial court, James A. Hathaway, J., refused to order such discovery, holding that the question of paternity had been decided in the wrongful death action and suggesting that any attack on that determination should be brought before the judge who had heard that case. Following denial of a motion for reconsideration, defendants Logan appealed by leave granted.

The Court of Appeals *held:*

REFERENCES

Am Jur 2d, Judgments § 572.

See the Index to Annotations under Collateral Estoppel; Legitimacy of Children; Malpractice by Attorney; Res Judicata.

The question of the child's paternity is a matter which has a bearing on a legitimate defense to this malpractice claim. Since neither the individual defendant nor the law firm had a direct interest in the subject matter of the wrongful death case, the doctrine of collateral estoppel does not preclude litigation of the paternity question in this malpractice action. The trial court should have permitted discovery on the paternity question.

Reversed and remanded.

ATTORNEY AND CLIENT — MALPRACTICE — DISCOVERY — PATERNITY — COLLATERAL ESTOPPEL.

An attorney being sued for malpractice on a claim that he, in his representation of the estate of a decedent in a wrongful death action, failed to protect the interests of an illegitimate child of that decedent may properly seek discovery on the question of the child's paternity even though in proceedings relating to the wrongful death action it had been determined that the decedent was the father of the child, since the attorney's representation of the decedent's estate did not make the attorney a party to that action and thus the attorney would not be collaterally estopped from raising the question of paternity in the subsequent malpractice action.

*Chambers, Steiner, Mazur, Ornstein & Amlin, P.C.* (by *Angela J. Nicita*), for plaintiff.

*Plunkett & Cooney, P.C.* (by *Robert G. Kamenec*), for defendants.

Before: REILLY, P.J., and MICHAEL J. KELLY and H. E. DEMING,* JJ.

PER CURIAM. Defendants James F. Logan and James F. Logan, P.C. (hereinafter defendants), appeal by leave granted the trial court's order denying their motion to compel the redeposition of plaintiff. On appeal, defendants contend the trial court erred in concluding that a prior circuit court order establishing the paternity of plaintiff's son prevented defendants from conducting discovery

* Former circuit judge, sitting on the Court of Appeals by assignment.

on and litigating the paternity issue. We agree and reverse.

In 1976, John Sommer, who was unmarried, was killed in an automobile accident. Joseph Sommer, his brother, as personal representative, retained defendants to represent the decedent's estate and filed a wrongful death action, MCL 600.2922; MSA 27A.2922. On June 17, 1980, the parties settled the case for $85,000. Judge Thomas J. Brennan entered a consent judgment for that amount and certified the matter to probate court. The certification to the probate court provided that, because the decedent was unmarried, the sole heirs were his parents.

On August 16, 1981, plaintiff moved to set aside the consent judgment and certification to probate court on the ground that her son was the illegitimate son and sole heir of the decedent. Upon completion of an evidentiary hearing on plaintiff's claim, Judge Brennan found that the decedent was the father of plaintiff's son. The judge concluded that, because plaintiff's son was the only person who could inherit the decedent's property, he alone was entitled to damages in the wrongful death action. Although Judge Brennan found that both decedent's brother and father were aware of his relationship to plaintiff's son, the judge could not conclude with certainty that there was a deliberate effort to defraud or an intentional misrepresentation to the court. A new consent judgment and certification to probate court were entered to reflect the court's rulings. On August 16, 1985, Judge Brennan issued an order amending the certification to probate court of the proceeds recovered under the wrongful death act and ordered redistribution of those proceeds in accordance with our Supreme Court's decision in *Crystal v Hubbard*, 414 Mich 297; 324 NW2d 869 (1982). As a

result, the share to which plaintiff's son was entitled was reduced from $85,000 to $24,150.

On February 25, 1987, plaintiff filed this malpractice action and alleged in her complaint that defendant Logan was professionally negligent in rendering service to the decedent's estate. The complaint specifically alleged:

> a. Defendant, James F. Logan, knew or should have known of the existence of a minor child of the decedent, John Sommer.
> b. That as a result of the negligent act and/or ommission [sic] stated above, Defendant, James F. Logan, undervalued the case, and settled for less than a reasonable amount.[1]

During plaintiff's deposition on August 20, 1987, she refused to answer inquiries concerning her son's paternity. Plaintiff asserted that paternity had been conclusively established by the earlier consent judgment and certification to probate court and that defendants were precluded both from discovery which might undermine that judgment and from relitigating the paternity issue. On January 28, 1988, defendants moved to compel the redeposition of plaintiff, but the trial judge, James A. Hathaway, J., denied the motion and suggested that defendants go back before Judge Brennan to try to reopen the matter. Judge Hathaway explained:

> I don't believe that I really have the right to start a process that would question the integrity of [Judge Brennan's] decision in that matter and I think that is really what you're asking me to do.

\* \* \*

---

[1] Plaintiff subsequently filed a first amended complaint, which stated the same allegations against defendants as the original complaint, quoted above.

I just am not going to allow you to involve me and this particular court in a process that raises issues that should have been raised before Judge Brennan if there are any.

Judge Hathaway denied defendants' motion for reconsideration, and they applied for, and were granted, leave to appeal to this Court. Subsequently, Judge Brennan denied defendant Blaise A. Repasky's motion to relitigate the paternity issue before him.

Defendants contend that the trial court erred in preventing them from conducting discovery upon and litigating the issue of paternity. A motion to compel discovery is a matter within the trial court's discretion, and the court's decision to grant or deny a discovery motion will be reversed only if there has been an abuse of that discretion. *Eyde v Eyde,* 172 Mich App 49, 54; 431 NW2d 459 (1988), lv den 432 Mich 857 (1989); *Davis v O'Brien,* 152 Mich App 495, 505; 393 NW2d 914 (1986), lv den 426 Mich 869 (1986).

Rules governing discovery are to be liberally construed in order to further the ends of justice. *Daniels v Allen Industries, Inc,* 391 Mich 398, 403; 216 NW2d 762 (1974). "The modern tendency is to broaden the scope of discovery when necessary to facilitate preparation, to guard against surprise, and to expedite justice." *Eyde, supra,* p 54.

Generally, parties may obtain discovery regarding any matter which is not privileged and is relevant to the subject matter involved in the pending action. MCR 2.302(B)(1); *Fitzpatrick v Secretary of State,* 176 Mich App 615, 617; 440 NW2d 45 (1989), lv den 433 Mich 876 (1989). MCR 2.302(B)(1)(a) provides:

It is not ground for objection that the informa-

tion sought will be inadmissible at trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.

In an action for legal malpractice, the plaintiff must prove (1) the existence of an attorney-client relationship, (2) the acts of the attorney which are alleged to have constituted negligence, (3) that the negligence proximately caused the injury, and (4) the fact and extent of the injury alleged. *Adell v Sommers, Schwartz, Silver & Schwartz, PC,* 170 Mich App 196, 204; 428 NW2d 26 (1988), lv den 432 Mich 902 (1989). In view of the acts of negligence alleged in the complaint, the relationship of plaintiff's son to the decedent is clearly relevant to the subject matter of the malpractice action. As affirmative defenses, defendants claimed that no attorney-client relationship existed between plaintiff and defendants and that plaintiff had no right to the settlement money in the wrongful death action because her son was not the decedent's son. If defendants were able to prove that plaintiff's son and the decedent were unrelated, plaintiff could not prove the existence of an attorney-client relationship or defendants' negligence. To prohibit defendants from discovery on that relationship would prevent them from investigating and presenting a potential defense to plaintiff's action.

The crux of this case is whether Judge Brennan's finding in the wrongful death action that the decedent was the father of the plaintiff's son estops or otherwise bars defendants from litigating the issue of paternity. We conclude that it does not.

Collateral estoppel precludes relitigation of an issue in a subsequent, different cause of action between the same parties where the prior proceeding culminated in a valid and final judgment and

the issue was actually litigated and necessarily determined. *People v Gates,* 434 Mich 146, 154; 452 NW2d 627 (1990); *Howell v Vito's Trucking & Excavating Co,* 386 Mich 37, 42; 191 NW2d 313 (1971). Application of the doctrine of collateral estoppel requires that the respective litigants were parties or privy to a party to the prior action. *Gates, supra* at 155-156; *Howell, supra* at 42. As our Supreme Court explained in *Howell, supra* at 43, quoting with approval *Bernhard v Bank of America Nat'l Trust & Savings Ass'n,* 19 Cal 2d 807, 811; 122 P2d 892 (1942):

> Under the requirement of privity, only parties to the former judgment or their privies may take advantage of or be bound by it. A party in this connection is one who is "directly interested in the subject matter, and had a right to make defense, or to control the proceedings, and to appeal from the judgment." A privy is one who, after rendition of the judgment, has acquired an interest in the subject matter affected by the judgment through or under one of the parties, as by inheritance, succession, or purchase. [Citations omitted.]

In this case, defendants were the attorney and law firm representing the decedent's estate in the wrongful death action. In that capacity, they did not acquire any interest in the subject matter affected by the judgment in that action. Although defendants had an interest in the sense that they were to receive fees for their services, we are not persuaded that such an interest made them privies; it merely made them independent contractors acting on behalf of their client, the estate.[2]

---

[2] An attorney with an interest, or potential interest, in a client's action could run afoul of the Michigan Rules of Professional Conduct. MRPC 1.8(j), for example, provides:

A lawyer shall not acquire a proprietary interest in the cause

In arguing that defendants were parties to the wrongful death action, plaintiff relies upon this Court's decision in *Knoblauch v Kenyon,* 163 Mich App 712; 415 NW2d 286 (1987). In *Knoblauch, supra* at 725, this Court held that, when a full and fair determination was made in a previous criminal action that the client received the effective assistance of counsel, the attorney in the subsequent civil malpractice action brought by the same client may defensively assert collateral estoppel as a bar. See also *Schlumm v Terrence J O'Hagan PC,* 173 Mich App 345, 356; 433 NW2d 839 (1988), lv den 433 Mich 855 (1989). However, *Knoblauch* dealt with the defensive use of collateral estoppel in a criminal to civil context, not, as in this case, the offensive use of collateral estoppel in the context of civil actions. In addition, in *Knoblauch* this Court did not conclude that the attorney was a privy of the client in the criminal case.

MCR 2.613(B) also does not prevent discovery on the paternity issue. Judge Brennan's order regarding paternity in the wrongful death case stands, and a contrary ruling by Judge Hathaway in plaintiff's malpractice action would not have the effect of setting aside or vacating Judge Brennan's order.

Reversed and remanded for proceedings consistent with this opinion. We do not retain jurisdiction.

---

of action or subject matter of litigation the lawyer is conducting for a client, except that the lawyer may:

(1) acquire a lien granted by law to secure the lawyer's fee or expenses; and

(2) contract with a client for a reasonable contingent fee in a civil case, as permitted by Rule 1.5 and MCR 8.121.